266 S.W.3d 251 (2008)
T.A.N., Appellant,
v.
M.J., Appellee.
No. 2007-CA-002584-ME.
Court of Appeals of Kentucky.
September 26, 2008.
*252 T.A.N., pro se, Louisville, KY, for appellant.
No Brief for Appellee.
Before LAMBERT, STUMBO, and THOMPSON, Judges.

OPINION
LAMBERT, Judge.
T.A.N. [hereinafter Mother] appeals an order entered by the Jefferson Circuit Court, providing additional visitation to her ex-boyfriend, M.J. [hereinafter Father]. After careful review, we affirm.
Mother and Father were never married, but lived together briefly and conceived a child, S.N. [hereinafter Child], born December 6, 2005. Mother claims that she moved out of Father's house due to domestic violence and because there were numerous people in and out of his home. Not long after moving out, she found out she was pregnant and informed Father. During her pregnancy, Mother's relationship with Father was strained and they did not have much contact. At the hospital during the birth of Child, Mother alleges that Father threatened her and that she threatened to call security if he did not leave. Father reported to Child Protective Services that Mother had been using marijuana during her pregnancy and asked that a drug test be performed on her and the baby. Apparently, no such testing was ever conducted. Mother and Father had no further contact until they went to court to determine custody and visitation.
Initially, Mother and Father agreed on a temporary visitation schedule during mediation on February 1, 2006. That schedule allowed Father visitation every Tuesday and Thursday from 5:00 p.m. until 8:00 p.m. and every other Sunday from 2:00 p.m. until 5:00 p.m. At that time, the parties also agreed that Dr. Jennifer Cebe *253 would perform a custodial evaluation so that a parenting schedule and primary custodian could be designated. Mother and Father also agreed that either party had the right to request the other to participate in a drug screening and that Father was to pay the costs for such tests. In an order dated April 11, 2006, the court adopted the agreements in the mediation and appointed Dr. Cebe to perform a custody and visitation evaluation.
A hearing was scheduled for May 10, 2006, regarding the parenting schedule but was postponed until June 28, 2006, to allow for the custodial evaluation to be completed. Meanwhile, on May 30, 2006, Mother filed a motion to suspend Father's visitation with Child. As grounds for this motion, Mother stated that while returning Child to her Mother's home on May 16, 2006, Father smelled of alcohol, had an open container of alcohol in the car, and ran his vehicle into a ditch. On June 28, 2006, Mother's motion was overruled and an order was entered on June 29, 2006, establishing that Father would have unsupervised visitation every Tuesday and Thursday from 4:30 p.m. to 7:30 p.m. and every Saturday from noon to 6:00 p.m.
On July 11, 2006, Mother filed a motion for the court to clarify its judgment and to provide particularized additional findings of fact, for supervised visitation, and for clarification on the required drug testing established in previous orders. On November 15, 2006, the parties entered into an agreed order in lieu of a trial/substantive hearing on custodial and parenting time issues. At this time, the parties had not completed the evaluation process with Dr. Cebe and instead agreed to attend mediation.
As matters had not been resolved, on June 20, 2007, the court ordered Father to contact Dr. Cebe and arrange for a time for an interview. This was to be done in time for Dr. Cebe to present a report at the trial on October 10, 2007. The court also ordered Father to submit to drug screening on a weekly basis, and if the report was not obtained prior to Father picking up Child for his visitation, that visitation was forfeited until the following week at which time Father had to show compliance with the order. Father was also ordered to arrange for Allergen Control to inspect his home for air quality, due to Child often coming home from his house with illnesses. The order reflects that this specific instruction was reserved.
On October 10, 2007, Mother filed a trial memorandum indicating that on that day, the day of the scheduled trial, the case was called and Mother was advised that Father's attorney had an illness and was told to reschedule the trial date. At this time, Mother indicated Father had not complied with the court's previous June 20, 2007, order. As of that date, Mother claimed Father had made no effort to contact Dr. Cebe and had not complied with the court ordered drug screens. Father testified that he had contacted Dr. Cebe but without prepayment she would not begin the custodial evaluation.
On November 9, 2007, the matter finally came before the court for the child custody and parenting trial, and upon Father's motion for expanded visitation. Both sides testified and presented witness testimony supporting their respective stances. Father testified that he could not afford the custodial evaluation and that accordingly, he had violated the court's previous orders. Based on this violation, Mother wanted visitation to remain the same until such custodial evaluation could be completed. The record reflects that the trial court determined that the case could proceed without the custodial evaluation, given that a home study had previously been conducted in 2006 and that the case focused largely *254 on factual issues, which were able to be addressed through testimony and argument. The court noted that it had not ordered the custodial evaluation, but instead that the parties had agreed to it in mediation and the court had later approved of this agreement. However, given the length of the case and the sensitive issue of a child's welfare at stake, it thought it best to proceed.
In its order entered November 14, 2007, the Jefferson Circuit Court made several findings of fact. It found that Father wanted more time with Child, that Father's testimony was that he did not use drugs, and that Father had enrolled in a parenting class to prepare to care for a baby. It found that Father has sole custody of another daughter, whom the court stated was "thriving in his care and is an honor roll student." Further, the court took judicial notice of parenting concerns regarding Mother due to her previous drug convictions and the removal of sibling children through state prosecuted child protective actions.
The court then awarded sole custody of Child to Mother due to "the extent of domestic violence in the relationship." The court ordered that all exchanges of Child should occur in public or at the exchange center. The parenting schedule was established as follows: "[Father] shall have parenting time with the minor child on Friday from 5:00 p.m. until Sunday at 5:00 p.m. three out of every four weekends beginning with the first weekend of the month. [Father] shall have overnight visits with the minor child on Tuesdays after 5:00 p.m. until Wednesday morning when he shall drop the child off at daycare. The parties shall alternate holidays, and the parent exercising parenting time on the holiday shall have the child overnight."
On November 20, 2007, Mother filed a motion to modify visitation, which was supported by her affidavit. She requested that the visitations be modified to alternate weekends from Friday at 5:00 p.m. to Sunday at 3:00 p.m. and Tuesday evenings from 5:00 p.m. to 8:00 p.m. In her affidavit, Mother argued that at the trial on November 7, 2007, the only competent evidence the court had before it was the home study done by Horrar and Associates in March and April of 2006. She argued that based on these evaluations, the parties had agreed that custodial evaluations by Dr. Cebe were to be scheduled, and the court had later ordered such an evaluation. She renewed her previous arguments that Father had not complied with previous court orders regarding the custody evaluation or the required drug screenings. She then argued that the court had ignored its own orders and had instead allowed Father to verbally smear her character by asking the court to take judicial notice of dependency actions that were eight years old. Mother argued that the court was selectively picking out pieces of an eight year puzzle and that the puzzle would have been complete had the custodial evaluation been performed per the court's previous orders. Finally, Mother argued that she believed the visitation schedule she was requesting was the standard visitation schedule when one parent has sole custody and the other visitation.
Father responded to Mother's motion, arguing that he could not afford the allergy testing of the home, the drug tests, or the custodial evaluation. He argued that the court was not in error to conduct the trial without the custodial evaluation and drug tests, because the court still allowed both sides to present evidence and testimony. The trial court overruled Mother's motion on December 5, 2007. The order states no grounds for the trial court's ruling but simply says the motion to alter, amend or vacate is overruled. Mother *255 now appeals the denial of her motion to modify visitation.
Mother argues that the trial court erred by ignoring its own previous orders and allowing the case to be tried without the custodial evaluation it had previously ordered; for ignoring the prior orders regarding weekly drug screenings; in not taking into consideration her work and school schedule when ordering the parenting schedule; and in not taking into consideration the results of home study evaluations.
We review the trial court's visitation orders under an abuse of discretion standard, as visitation rights are found to be an area within the discretion of the trial court. Wilhelm v. Wilhelm, 504 S.W.2d 699 (Ky.1973). "An abuse of discretion occurs when a `trial judge's decision [is] arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" Farmland Mut. Ins. Co. v. Johnson, 36 S.W.3d 368, 378 (Ky.2000) (quoting Goodyear Tire and Rubber Co. v. Thompson, 11 S.W.3d 575, 581 (Ky.2000)).
In this case, after several hearings and a lengthy trial, which included testimony of both parties and several witnesses, the trial court determined that sole custody should be with Mother with Father to have the visitation described above. Up until the day of the trial, Father had been permitted only twelve hours a week with his daughter. The trial court found that there was no concrete evidence that Father was a bad father, and that in fact the evidence showed that Father had passed his drug tests and had raised his older daughter to be an honor roll student. Furthermore, the record reflects that Father had not had any prior drug convictions or child protection actions regarding either of his children. Based on the lack of any evidence to the contrary, the court determined that Father was fit to parent the child and awarded him the visitation it saw fit under the circumstances.
While Mother now claims that a custodial evaluation was necessary and that in fact the court had ordered it, the record reflects that the parties agreed to this during an early mediation when the baby was only months old and that the court adopted their agreement into the record. At no time did the court, on its own, determine that a custodial evaluation was necessary. When neither party could afford to pay for the evaluation, the court determined that it was not necessary and proceeded with the trial. This decision, well within the trial court's power, does not rise to an abuse of discretion. If anything, it makes sense given that this case had gone on for two years, a lengthy time for a child custody and visitation case. While Mother would have us say that Father's failure to pay for the custodial evaluation makes him an unfit father not worthy of increased visitation, we simply disagree. The record reflects sufficient evidence to support the trial court's decision to proceed without the custodial evaluation and supports the court's award of increased visitation to Father.
Mother's claim that the trial court ignored its previous orders regarding drug screenings is without merit. The record reflects that Father underwent drug screenings for seven months, none of which came back positive for drug use. The court heard testimony that Father could no longer afford to have weekly screenings and was not being permitted to see Child, even when the screenings came back negative. Thus, while Mother assumes the court ignored its previous rulings, the record reflects that the court determined that the drug tests were no longer necessary and that a child custody *256 determination should be made and a visitation schedule established.
Mother's claims that the court did not take into account her school and work schedule were not preserved on appeal, and therefore we need not address them.
Finally, the record reflects that the court did take into consideration the home study performed in March 2006. This home study was discussed at length and several witnesses testified regarding the findings. In fact, Father was questioned about this and testified that he had enrolled and completed parenting classes, which was the only issue cited in the home study. Otherwise, the record reflects that the home study recommended joint custody of Child.
Based on the foregoing, we do not find that the Jefferson Circuit Court's award of visitation to Father was an abuse of discretion. Accordingly, the court's order is affirmed.
ALL CONCUR.