Carrie VARNEY, Appellant

v.

Edward J. BINGHAM, Appellee

NO. 2016–CA–000370–ME

Court of Appeals of Kentucky.

FEBRUARY 24, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Christopher Lee Coffman, Frankfort, Kentucky

BRIEF FOR APPELLEE: Sheila M. Donovan, Lexington, Kentucky

BEFORE: JONES, D. LAMBERT, AND TAYLOR, JUDGES.

OPINION

JONES, JUDGE:

Carrie Varney appeals the December 1, 2015, Order of the Estill Circuit Court, adopting the recommendations of the Domestic Relations Commissioner ("DRC") granting Appellee, Edward Bingham, sole custody of the minor child. Having reviewed the record and being otherwise sufficiently advised, we vacate the circuit court's order and remand this matter for additional proceedings.

I. FACTUAL AND PROCEDURAL BACKGROUND

Carrie and Edward have never been married, but they were involved in a romantic relationship with one another for some period of time. During their relationship, Carrie gave birth to a child on August 29, 2014. Carrie continued living with Edward until late October of 2014, when she took the child and left the home the parties had been staying in.

After moving out, Carrie sought emergency custody of the child. Her motion was granted, and an order to this effect was entered on November 18, 2014. Edward moved the court to set the order aside, claiming that he had not been properly served or given notice of Carrie's motion. Edward also filed his own motion seeking sole custody of the child.

A hearing was held on December 4, 2014. At the hearing, the court addressed Edward's motion to vacate as well as the Emergency Protective Order (EPO) Carrie filed against Edward. The court granted Edward's motion on the basis that he did not receive proper notice. In addressing the EPO, the court noted that it found Carrie to be the more credible party and entered a Domestic Violence Order (DVO) against Edward.

The court then referred the custody issue to the Estill County DRC. Although a hearing is not included in the record, the Docket Sheet indicates that the DRC awarded Carrie temporary sole custody, with visitation to Edward, and modified the DVO to allow text communication.

On December 30, 2014, a notice of filing and an agreement between the parties as to timesharing was entered. On March 16, 2015, Carrie filed a letter with the court, requesting an immediate court date because "the Father Edward Bingham is denying me my child." A hearing was held on April 3, 2015, by which time Edward had returned the child to Carrie. Accordingly, the hearing was continued by agreement of the parties.

After a number of court proceedings, a final hearing was held on August 13, 2015, regarding the parties' petitions for sole custody. The DRC conducted a lengthy

hearing where both parties were present and represented by counsel. The DRC heard testimony from numerous witnesses.

Carrie testified that she attends Eastern Kentucky University. She explained that she had previously had a drug problem, but had not used drugs in a number of years since completing an intensive drug court program prior to her pregnancy and child's birth. Carrie testified that she previously lived with her brother, but is now living with her boyfriend, Mr. Pope, in a home where the child has her own bedroom. She admitted that Mr. Pope and Edward are very hostile with one another, but blames Edward for the hostility. Carrie also testified that Edward is very controlling with her.

Edward testified that he lives with his parents and that the child has her own room at their home. However, he admitted that he slept on the couch to allow the child use of the bedroom. He testified that his mother assisted in caring for the child while he was working. He expressed concern about Mr. Pope, Carrie's prior drug problem, and smoking around the child.

Sherrie Rose, Carrie's cousin who often babysits the child for Carrie, also testified. She acknowledged that she was aware of Carrie's previous drug issues, but testified that the child is well taken care of and that she does not smoke around the child. Ms. Rose also testified that she knows Mr. Pope and believes that he is a fine person to have around the child.

Carrie's mother, Ms. Wagner, also testified. While she conceded that Carrie did previously have a drug problem and was known to steal during that time, she indicated that Carrie had been fine since completion of the drug program prior to child's birth. Ms. Wagner also testified that Edward had been violent with Carrie in the past. Ms. Wagner believes Carrie is a good mother and the child is happy.

Edward's mother, Sandra Riddell, also testified about an altercation that occurred during an exchange of the minor child where Mr. Pope and Edward became hostile with one another.

Edward's ex-girlfriend, Melissa Allen, testified that she has one child with Edward. Ms. Allen admitted that she previously sought and obtained an EPO against Edward. However, she downplayed the incident as a "miscommunication."

While Edward testified that he believed he observed "track marks" on Carrie's arms, she denied any current drug use. At the conclusion of the hearing, Carrie agreed to submit to a hair follicle test. The results of the hair follicle testing were negative for all substances tested.

On October 15, 2015, the DRC issued its recommendations. Considering the factors in KRS[1] 403.270, the DRC concluded that the best interests of the child would be served by awarding sole custody to Edward.

On October 27, 2015, Carrie filed exceptions to the DRC's recommendations. Ultimately, the trial court denied Carrie's exceptions and adopted the DRC's recommendations. On December 10, 2015, Carrie filed a motion for a new trial, to alter, amend or vacate the judgment, and for additional findings. The court overruled Carrie's motion with respect to sole custody, but did modify the order so that visitation was in accordance with the parties' previous agreement. This appeal by Carrie followed.

## II. Standard of Review

The proper standard of review for any custody award is as follows:

1. Kentucky Revised Statutes.

Since the family court is in the best position to evaluate the testimony and to weigh the evidence, an appellate court should not substitute its own opinion for that of the family court. If the findings of fact are supported by substantial evidence and if the correct law is applied, a family court's ultimate decision regarding custody will not be disturbed, absent an abuse of discretion. Abuse of discretion implies that the family court's decision is unreasonable or unfair. Thus, in reviewing the decision of the family court, the test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion.

*Coffman v. Rankin*, 260 S.W.3d 767 (Ky. 2008) (citing *B.C. v. B.T.*, 182 S.W.3d 213, 219-20 (Ky. App. 2005)). With this standard in mind, we turn to Carrie's various assignments of error.

### III. ANALYSIS

#### A. Standing

■ Carrie's first argument is that Edward lacked standing to seek custody of the child because he had not proven paternity. Edward counters that he admitted paternity in open court during the custody proceedings and further that Carrie never raised the standing issue before either the DRC or the trial court, preventing her from relying on the issue for the first time on appeal.

We agree with Edward that Carrie waived her right to contest his standing. While Carrie stated in her emergency petition that no paternity test had been conducted, she later stated in open court that she was not challenging Edward's claim that he was the child's father. Furthermore, when Edward filed his motion seeking sole custody, Carrie failed to raise the standing issue. Likewise, the agreed visitation schedule Carrie signed included a provision indicating that she was the mother and Edward was the father of the child she gave birth to in August of 2014.

We will not address the standing issue for the first time on appeal. Carrie did not assert the standing issue below nor did she contest Edward's claim that he was child's biological father. Instead, she represented to the DRC that there was no dispute as to child's paternity. Carrie waived her right to contest Edward's standing. *See Harrison v. Leach*, 323 S.W.3d 702, 708 (Ky. 2010) ("[A] right to contest standing may be waived, even in child custody cases.").

#### B. Custody

■ KRS 403.270 governs initial custody determinations. *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008). When determining an award of child custody, KRS 403.270(2) instructs the court to give equal consideration to both parents and to award custody in accordance with the best interests of the child. In so doing, the court shall "consider all relevant factors" and shall specifically consider:

(a) The wishes of the child's parent or parents, and any de facto custodian, as to his custody;

(b) The wishes of the child as to his custodian;

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school, and community;

(e) The mental and physical health of all individuals involved;

(f) Information, records, and evidence of domestic violence as defined in KRS 403.720.

KRS 403.270(2).

The DRC provided a lengthy analysis of the factors set forth in the statute. The DRC concluded that most of the factors were fairly balanced between Edward and Carrie. However, the DRC determined that Carrie's past drug use and criminal history were evidence of a weak mental condition that could negatively affect her ability to parent. The DRC's reliance on Carrie's past drug problems and criminal history was in error.

■ KRS 403.270(3) provides that the "court shall not consider conduct of a proposed custodian that does not affect his relationship to the child." Our Supreme Court has confronted the issue of parental misconduct and concluded that:

> when the misconduct of a proposed custodian is advanced as a factor in the determination of custody, evidence of such misconduct may be heard and received, but before giving any consideration to such misconduct, the court must conclude, in his reasonable discretion, that such misconduct has affected, or is likely to affect, the child adversely. If such a determination is made, the trial court may then consider the potential adverse effect of such misconduct as it relates to the best interest of the child.

*Krug v. Krug*, 647 S.W.2d 790, 793 (Ky. 1983).

In the case before us, the DRC's recommendations do not explain how Carrie's past adversely affected the best interest of the child, or how it might do so in the future. There was no evidence that Carrie displayed a pattern of substance abuse and related behavior at the time of the hearing that rendered her incapable of adequately caring for the child and ensuring the child's safety. While Carrie had an admitted history of substance use, she completed an intensive drug court program, from which she graduated prior to the child's birth. In order to complete the Madison County Drug Court program, which lasted from March 2012 through November 2013, Carrie completed required assignments, counseling, substance abuse education groups, and financial management classes. She also completed a community service project with Hope's Wings, a domestic violence shelter. During this program she was recognized several times for her sobriety milestones as well as her progress with employment. Carrie has not been arrested since January of 2013, after she failed to appear at court. The child was born in August of 2014.

■ While a court is not required to wait for children to be harmed before it considers a parent's conduct, there should be credible evidence to suggest that the conduct has actually or is likely to put the child at risk of harm. *S. v. S.*, 608 S.W.2d 64 (Ky. App. 1980). Here, the DRC found only that Carrie had a drug problem and a criminal record that predated child's birth; the DRC made no finding that Carrie had actively abused drugs or engaged in any criminal behavior since child's birth or was likely to do so in the immediate future. Accordingly, we conclude that it was error for the DRC (and in turn, the trial court) to rely on Carrie's past conduct (all of which occurred prior to child's birth) to support its conclusion that the child's best interest would be served by awarding sole custody to Edward.

Without any testimony or evidence presented showing how Carrie's prior problems have had any impact on her current relationship with the child or are likely to in the future, we cannot find that there is substantial evidence to support the recommendations of the DRC adopted by the trial court. Accordingly, we vacate and re-

mand. On remand, the trial court should not consider any conduct unless it has made a determination supported by appropriate findings that such conduct is likely to affect the child.

Additionally, we would remind that the trial court that while the DRC was rightly concerned with the parties' inability to interact with one another, there are various hybrid arrangements recognized by our Supreme Court, which it may wish to consider in lieu of awarding sole custody to one parent or another. *See Pennington v. Marcum*, 266 S.W.3d 759, 765 (Ky. 2008).

## IV. CONCLUSION

For these reasons, we vacate the Order of the Estill Circuit Court and remand for proceedings consistent with this opinion.

ALL CONCUR.