RENDERED: DECEMBER 15, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0204-MR

ANTWAN MILES                                                  APPELLANT

v.

APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE TARA HAGERTY, JUDGE
ACTION NO. 19-CI-501420

LYNDSAY SKAGGS                                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, JONES, AND McNEILL, JUDGES.

JONES, JUDGE: Antwan Miles appeals from an order of the Jefferson Family Court pertaining to custody and visitation of his minor child, M.B.M. ("Child"). We affirm.

## I. BACKGROUND

Antwan and Lyndsay Skaggs met in 2018. At the time, Antwan was on supervised release for federal convictions related to drug trafficking and

possession of a firearm by a convicted felon.[1] Although Lyndsay is a career probation and parole officer with the Louisville Metro Department of Corrections, she has maintained she had no idea about and never suspected Antwan's criminal history, including felony convictions in Kentucky, when they began dating. Lyndsay became pregnant very early in the relationship and gave birth to Child in April 2019. By the time Child was born, the parties' relationship had deteriorated, and Lyndsay was aware of Antwan's extensive criminal history. Lyndsay filed at least two petitions seeking a domestic violence order ("DVO") against Antwan prior to October 2020, which were ultimately dismissed.

On May 7, 2019, Antwan filed a petition for joint custody of Child. On June 25, 2019, he filed a motion for a temporary visitation schedule, but notably did not ask for a temporary custody order. In July 2019, the family court entered an order that awarded Antwan roughly equal parenting time. However, just a few months later, Antwan was the subject of an investigation by the Cabinet for Health and Family Services ("CHFS") and the family court ordered Antwan's visitation to be supervised. In October 2019, Antwan provided proof that the allegations against him were unsubstantiated and motioned the family court to

---

[1] Antwan had served nine and one-half years' incarceration prior to being released in 2018. Although Antwan's brief states he successfully completed federal supervised release in September 2022, Antwan testified he was no longer "on paper" at the hearing in August 2022.

reinstate the prior visitation schedule. For reasons that are not clear from the record before us, Antwan's parenting time remained supervised.[2]

On February 27, 2020, the family court entered an order setting a trial for Antwan's custody petition on June 4, 2020. However, just days before the trial, Antwan filed a motion with the family court to convert the trial to a case management conference. The motion stated, in relevant part, that neither party was compliant with pretrial matters. In the interim, Antwan's visitation remained supervised and took place at Safe Haven in Louisville, Kentucky. Antwan did not motion the family court to reschedule the trial.

In November 2020, the family court granted a DVO against Antwan on behalf of Lyndsay only. Antwan appealed and this Court affirmed.[3] In January 2021, Lyndsay filed a motion to suspend Antwan's visitation, citing the DVO and Antwan's recent arrest for drug trafficking and firearms. By the time the family court heard Lyndsay's motion and entered an order, the criminal charges against Antwan had been dismissed and the family court ordered Antwan to resume the same supervised parenting schedule.

---

[2] The prior orders of the family court are perfunctory and the hearings that took place around the time of the CHFS investigation are not in the record before us.

[3] *See Miles v. Skaggs*, No. 2021-CA-0222-ME, 2021 WL 3935470 (Ky. App. Sep. 3, 2021). The family court renewed the DVO for another three years in November 2021.

In September 2021, Antwan motioned the family court for additional, unsupervised parenting time. On February 8, 2022, the family court entered an order that increased Antwan's parenting time to up to four hours per week, still to be supervised by Safe Haven. However, the family court also ordered that permanent sole custody of Child was to remain with Lyndsay. This was an error because the family court had never entered a prior custody order. Antwan subsequently filed various motions and the family court entered an order that granted temporary custody of Child to Lyndsay and scheduled a trial for Antwan's custody petition. The trial took place in August 2022, and the family court entered an order on September 16, 2022, granting permanent sole custody of Child to Lyndsay and keeping Antwan's supervised parenting schedule in place. The family court also ordered that, if Antwan ever desires increased, unsupervised parenting time, he must first undergo a parenting/risk assessment by Dr. Kelly Marvin. Antwan filed a motion to alter, amend, or vacate the order, which was denied. This appeal followed.

## II. STANDARD OF REVIEW

Regarding custody of Child, the proper standard of review is as follows:

> Since the family court is in the best position to evaluate the testimony and to weigh the evidence, an appellate court should not substitute its own opinion for that of the family court. If the findings of fact are

supported by substantial evidence and if the correct law is applied, a family court's ultimate decision regarding custody will not be disturbed, absent an abuse of discretion. Abuse of discretion implies that the family court's decision is unreasonable or unfair. Thus, in reviewing the decision of the family court, the test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion.

*Varney v. Bingham*, 513 S.W.3d 349, 352 (Ky. App. 2017) (quoting *Coffman v. Rankin*, 260 S.W.3d 767 (Ky. 2008)).

Similarly, "[w]e review the trial court's visitation orders under an abuse of discretion standard, as visitation rights are found to be an area within the discretion of the trial court." *T.A.N. v. M.J.*, 266 S.W.3d 251, 255 (Ky. App. 2008) (citation omitted).

## III. ANALYSIS

Antwan first argues about the length of time it took for the family court to conduct a custody hearing. His remaining arguments focus generally on his contention that the family court erred in applying the mandates of (1) KRS[4] 403.270 related to custody determinations; (2) KRS 403.315 and the applicability

---

[4] Kentucky Revised Statute.

of the DVO in this case; and (3) KRS 403.320 regarding visitation of a noncustodial parent.[5]

Turning to Antwan's first argument, it is without merit and refuted by the record before us. Although Antwan motioned the family court for a temporary visitation schedule shortly after filing his petition for custody, he did not file a motion for temporary custody at any point. When the family court set a trial date regarding custody, it was Antwan who requested to convert the trial to a case management conference. The record reveals other causes for delays in this case, including domestic violence proceedings, the COVID-19 pandemic, the involvement of the CHFS, and Antwan's arrest and incarceration in September 2020. However, despite the various delays discernable from the record, the fact remains that Antwan never attempted to reschedule any custody proceeding until the family court mistakenly ordered that permanent sole custody was to remain with Lyndsay on February 8, 2022. There was no error on the part of the family court for any delay in the proceedings.[6]

---

[5] Antwan also makes arguments related to KRS 403.280, but because this statute pertains to temporary custody orders that are inapplicable to this appeal, we decline to address these arguments.

[6] Furthermore, when a trial court is derelict in its duty to adjudicate a pending matter, the proper way to seek relief from this Court is by commencing an original action pursuant to Kentucky Rule of Appellate Procedure ("RAP") 60 requesting a writ of mandamus. *Teen Challenge of Kentucky, Inc. v. Kentucky Commission on Human Rights*, 577 S.W.3d 472, 480 (Ky. App. 2019) ("Mandamus is an appropriate remedy to compel an inferior court or administrative body to adjudicate on a subject within its jurisdiction where it neglects or refuses to do so[.]").

We next address the family court's award of sole custody to Lyndsay under KRS 403.270, which provides, in relevant part:

(2) The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any de facto custodian. Subject to KRS 403.315, there shall be a presumption, rebuttable by a preponderance of evidence, that joint custody and equally shared parenting time is in the best interest of the child. If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or de facto custodian has with the child and is consistent with ensuring the child's welfare. The court shall consider all relevant factors including:

(a) The wishes of the child's parent or parents, and any de facto custodian, as to his or her custody;

(b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or de facto custodian may have over the child's wishes;

(c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;

(d) The motivation of the adults participating in the custody proceeding;

(e) The child's adjustment and continuing proximity to his or her home, school, and community;

(f) The mental and physical health of all individuals involved;

(g) A finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed by one (1) of the parties against a child of the parties or against another party. The court shall determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program; [and]

. . . .

(k) The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent or de facto custodian, except that the court shall not consider this likelihood if there is a finding that the other parent or de facto custodian engaged in domestic violence and abuse, as defined in KRS 403.720, against the party or a child and that a continuing relationship with the other parent will endanger the health or safety of either that party or the child.

Antwan argues the family court failed to consider the proper legal standard in determining custody. He points to KRS 403.270(2)(g) and contends the family court failed to "determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party." This is refuted by the family court's order. Not only did the family court consider the

-8-

statutory provision, but it also considered it in the context of KRS 403.270(2)(k) and KRS 403.315. The family court clearly believed that a continuing relationship with Antwan would endanger Lyndsay's health and safety. KRS 403.270(2)(k). The family court also analyzed KRS 403.315, which provides,

> [w]hen determining or modifying a custody order pursuant to KRS 403.270, 403.280, 403.340, 403.740, the court shall consider the safety and well-being of the parties and of the children. **If a domestic violence order is being or has been entered against a party by another party or on behalf of a child at issue in the custody hearing, the presumption that joint custody and equally shared parenting time is in the best interest of the child shall not apply as to the party against whom the domestic violence order is being or has been entered**. The court shall weigh all factors set out in KRS 403.270 in determining the best interest of the child.

(Emphasis added.)

Accordingly, because of the DVO, Lyndsay did not have a burden to overcome a presumption of joint custody and equal parenting time, and the family court did not presume that joint custody and equal parenting time was in Child's best interest. Despite Antwan's assertions to the contrary, the family court's order considered each of the factors in KRS 403.270(2). We will not detail all of those findings here, except to note that they are supported by the evidence contained in the record before us. Instead, we will focus on a few significant findings that

-9-

Antwan highlights in his brief to this Court. These findings generally relate to what the family court determined was Antwan's lack of credibility.

The family court's order plainly and unambiguously indicates that it did not find Antwan's testimony credible. CR[7] 52.01 provides, in relevant part that "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *See also Williford v. Williford*, 583 S.W.3d 424, 427 (Ky. App. 2019). There are several discernable reasons that the family court found Antwan lacked credibility. First, although Antwan testified he had not contacted Lyndsay since the DVO was in effect, Lyndsay produced a call log on her cellular telephone that showed numerous missed calls from Antwan. Second, the family court found credible Lyndsay's testimony that she agreed to meet Antwan at a local store, where he gave her $5000 in cash as incentive to stop litigating this case.[8] Antwan denied the meeting or the exchange of cash ever occurred. Finally, the family court found that Antwan's stated income and expenses simply did not

---

[7] Kentucky Rule of Civil Procedure.

[8] The family court found that Antwan's arrangement of the meeting with Lyndsay and giving her $5000 cash were evidence of Antwan's failure to follow court orders, specifically the DVO. Lyndsay testified she believes Antwan's income and access to large amounts of cash are due to ongoing drug dealing, which she adamantly denounces. However, she nevertheless accepted the spoils of Antwan's alleged criminal activity, while also ignoring the DVO. The family court found that "Lyndsay's demeanor is not that of the stereotypical weak and terrified victim of domestic violence but that does not make her testimony unbelievable." Although the family court recognized that Lyndsay's agreement to meet Antwan and accept the money did not "place her in the best light," this recognition fails to underscore Lyndsay's participation in activities she now seeks to use against Antwan.

add up. He testified that his net income is approximately $800 per month from working at his sister's commercial cleaning service, and that this is his only income. However, the family court noted his stated monthly expenses, including $400 for his portion of rent; $289 for child support; $100 for utilities; $300 for groceries; $65 for his own cellular telephone; and an unknown amount for attorney's fees were inexplicable. Further testimony also revealed that Antwan also paid half of his older daughter's new iPhone and took her and her other siblings on a vacation to Myrtle Beach for one week.[9] Lyndsay also testified that, when she was still in a relationship with Antwan, he paid cash for a new Dodge Charger at a dealership. Finally, Antwan testified that he pays for daycare for his child from another relationship and must pay for his visits with Child at Safe Haven. The family court was well within its authority to find that Antwan's testimony regarding his income and expenses was not credible. This, in turn, lead the court to find that Antwan's remaining testimony was also not credible. There was no abuse of discretion.

Antwan's next argument is that the family court improperly restricted his visitation with Child. Per the order, Antwan is permitted up to four hours of

---

[9] Loretta White, maternal grandmother of one of Antwan's other children, also testified that Antwan takes his children on yearly vacations.

visitation each week, to be supervised by Safe Haven. With regard to visitation,

KRS 403.320 provides, in relevant part,

> (1) A parent not granted custody of the child and not awarded shared parenting time under the presumption specified in KRS 403.270(2), 403.280(2), or 403.340(5) is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health. Upon request of either party, the court shall issue orders which are specific as to the frequency, timing, duration, conditions, and method of scheduling visitation and which reflect the development age of the child.

> (2) If domestic violence and abuse, as defined in KRS 403.720, has been alleged, the court shall, after a hearing, determine the visitation arrangement, if any, which would not endanger seriously the child's or the custodial parent's physical, mental, or emotional health.

In ruling on the visitation schedule the family court took into account the DVO, Antwan's repeated violations, and the total inability of the parties to cooperate and communicate with one another. The family court also found that Antwan uses Child as a means to control Lyndsay through attempts at bribery and ongoing litigation. Further, the court also considered Antwan's situation regarding his other five children. Antwan had his parental rights terminated to two of his older children; does not have custody of his eighteen-month-old daughter; and only recently gained custody of another child from a separate family court division in Jefferson County. Finally, the family court considered Antwan's criminal

-12-

conviction history. Prior to 2018, KRS 403.270(3) provided that the "court shall not consider conduct of a proposed custodian that does not affect his relationship to the child." This is no longer the law. In considering alleged parental misconduct, evidence regarding the misconduct

> may be heard and received, but before giving any consideration to such misconduct, the court must conclude, in his reasonable discretion, that such misconduct has affected, or is likely to affect, the child adversely. If such a determination is made, the trial court may then consider the potential adverse effect of such misconduct as it relates to the best interests of the child.

*Krug v. Krug*, 647 S.W.2d 790, 793 (Ky. 1983). The Kentucky Supreme Court also noted that "a judge is not required to wait until the children have already been harmed before he can give consideration to the conduct causing the harm." *Id.*

Antwan cites *Varney, supra*, for his contention that the family court relied on Antwan's past criminal behavior to deny him reasonable visitation. In *Varney*, this Court vacated a circuit court order that awarded sole custody of the parties' child to the father based on the mother's past drug use (*i.e.*, prior to her pregnancy) when there was no evidence that her substance abuse was ongoing. *Varney*, 513 S.W.3d at 353. In contrast, in the instant action, the family court found there were indications that Antwan's criminal activity may be continuing, including his inexplicable finances and recent arrest for drug trafficking charges,

-13-

even though the charges were ultimately dismissed.[10] As a result, the family court concluded that allowing Antwan to have parenting time with Child in an unsupervised environment "would seriously endanger [Child's] physical, mental, moral, or emotional health."

"As used in [KRS 403.320(1)], the term 'restrict' means to provide [either] parent with something less than 'reasonable visitation.'" *French v. French*, 581 S.W.3d 45, 50 (Ky. App. 2019) (citation omitted). We do not agree with Antwan that he was awarded less than reasonable visitation. The family court carefully weighed the evidence and found that there were "grave concerns" regarding Antwan's ability to parent Child on an unsupervised basis. However, the family court indicated it would be open to the possibility of Antwan receiving increased and possibly unsupervised parenting time in the future, pending the results of a parenting/risk assessment. There was no error on the part of the family court.

---

[10] Both parties attempt to use Antwan's recent arrest to their respective advantage. Antwan points to the fact that the charges were dismissed in an effort to cast a positive light; Lyndsay argues that simply because the charges were dismissed does not mean law enforcement did not find drugs, firearms, and large amounts of cash when executing a search warrant where Antwan was living at the time.

## IV. CONCLUSION

For the foregoing reasons, the Jefferson Family Court did not abuse its discretion in the order awarding sole custody of Child to Lyndsay and granting Antwan supervised visitation. Accordingly, we affirm.


ALL CONCUR.


BRIEF FOR APPELLANT:

John H. Helmers, Jr.
Melina Hettiaratchi
Louisville, Kentucky

BRIEF FOR APPELLEE:

Robert Louis Fleck
Louisville, Kentucky