Phillip Ray MOORE, Movant,

v.

Linda A. MOORE, Respondent.

Supreme Court of Kentucky.

Jan. 16, 1979.

Rehearing Denied March 20, 1979.

J. D. Buckman, Jr., Shepherdsville, for movant.

Glay E. Maggard, Munfordville, for respondent.

STEPHENSON, Justice.

In a divorce proceeding the trial court awarded custody of the parties' five-year-old daughter to the father, movant. The Court of Appeals reversed the trial court. We granted discretionary review and affirm the judgment of the Court of Appeals.

The record on the custody proceedings is replete with evidence concerning both parties' romantic conduct, especially that of the respondent. The only evidence argued by the parties is testimony admitted over the objection of the respondent concerning a trip out of the state with a married man. The respondent admitted to sexual intercourse during this trip of several days. There is nothing in the record to suggest this conduct in any way affected the respondent's relationship with the child or that the child was aware of this illicit relationship.

It is apparent from the record that this conduct of the respondent was the principal factor in the decision of the trial court awarding the custody to the movant.

As observed by the Court of Appeals, the record established that both parties were equally fit to have custody of the daughter if the evidence of this instance of illicit sexual behavior is excluded.

We agree with the Court of Appeals that the judgment of the trial court should be reversed.

KRS 403.270 provides:

"(1) The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(a) The wishes of the child's parent or parents as to his custody;

(b) The wishes of the child as to his custodian;

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school, and community; and

(e) The mental and physical health of all individuals involved.

"(2) The court shall not consider conduct of a proposed custodian that does not affect his relationship to the child."

The commissioners' note to this section (402) of the Uniform Marriage and Divorce Act, adopted by the General Assembly in KRS 403.270, comments on (2) as follows:

"The last sentence of the section changes the law in those states which continue to use fault notions in custody adjudication. There is no reason to encourage parties to spy on each other in order to discover marital (most commonly, sexual) misconduct for use in a custody contest. This provision makes it clear that unless a contestant is able to prove that the parent's behavior in fact affects his relationship to the child (a standard which could seldom be met if the parent's behavior has been circumspect or unknown to the child), evidence of such behavior is irrelevant."

The only conclusion to be drawn from KRS 403.270(2) when read with the note of the commissioners is that there must be proof that the sexual misconduct affects the relationship of the parent to the child; otherwise, the evidence of such misconduct is irrelevant and should not be admitted into evidence. Here there is no showing or even a suggestion that the child was aware of respondent's misconduct or that the relationship of the child and the respondent was in any way affected by this incident.

The testimony should have been excluded, and without this testimony the parties are in substantially equal positions with regard to fitness to have custody of the child. In this situation, the natural preference for the mother is in the best interest of the child. *Casale v. Casale*, Ky., 549 S.W.2d 805 (1977).

This disposition is simply following the legislative mandate as expressed in KRS 403.270.

The judgment of the Court of Appeals is affirmed.

Full court sitting. CLAYTON, LUKOWSKY, REED, and STEPHENSON, JJ., concur. STERNBERG, J., files a dissent in which PALMORE, C. J., and AKER, J., join.

STERNBERG, Justice, dissenting.

The record reflects that the trial judge heard the testimony of 17 witnesses, consisting of 94 pages, before awarding temporary custody of the infant to her father. The trial court was favored with the depositions of 17 witnesses, consisting of 182 pages, before making an award of permanent custody to the father.

Linda and Phillip lived and operated a restaurant in Mount Washington, Kentucky. The testimony pertinent to the issue discloses, and the trial judge was entitled to believe, that a year or two prior to the filing of this action Linda spent some time in a motel room with a male companion, after which he and she went on a date with another couple; that on one occasion Linda was seen kissing Tommy Haney in the restaurant and on at least two occasions they were in the men's restroom of the restaurant for 15 to 20 minutes with the lights out; that for several months Linda had become careless in the preparation of meals for Danielle; that the respondent inflicted unusual and painful discipline on Danielle by pulling her hair and with a hair brush to her buttocks; that on one occasion respondent took Danielle with her and left movant for a week or so, with only a letter to movant saying she had to get away for awhile; that on the Saturday night of her recent venture she wrote movant that she was going to French Lick, Indiana, and didn't know when she would be back, knowing at that time that she was not going to French Lick but to the Smokey Mountains. So while Danielle was spending the night with her maternal grandmother and mov-

ant was at home, the respondent closed the restaurant about midnight, took part of the receipts of the day and she and Tommy left town on his motorcycle. During the trip they spent each day and night together. Not once did she telephone home to inquire of the baby or of Phillip. Danielle is very fond of her father and he in turn shows the same affection for her.

Counsel for respondent argues as if the week-long motorcycle trip which his client made with Tommy was her only fault. If that were so, there would be no dissent on the part of this writer. That is not, however, the situation. The record reflects that the motorcycle escapade was only one of many acts of indiscretion which were brought to the attention of the trial court.

The concern of this court is the effect that the conduct of Linda will have on the welfare of her daughter. Danielle's life is at stake. Argumentatively, it has been said that a prostitute mother can so conduct herself that her profession not only will not be known to her child but her conduct may be so inconspicuous and tactful as not to cast a reflection on the child. This argument, if applied indiscriminately, fails to take into account the social classes of our communities. In a metropolitan center it may be argued with some possibility of being true, but not in small communities where everyone knows of the "doings and carryings on" of everyone else. In other words, respondent may get by with it in a large town, but not in a small town. It doesn't take much gossip about the clandestine conduct of a mother to affect and stigmatize her guiltless child. "As mother, as daughter" is not necessarily true. It is more likely to be true, however, where the wag is freely flowing.

Our review is limited to the question of whether the action of the trial judge in awarding custody of Danielle to Phillip was clearly erroneous. I do not think it was.

I would reverse the majority opinion of the Court of Appeals and affirm the judgment of the circuit court.

PALMORE, C. J., and AKER, J., join in this dissent.