**Beverly Sturgill KRUG, Movant,**

v.

**Nicholas J. KRUG, Respondent.**

Supreme Court of Kentucky.

March 30, 1983.

Harlan H. Veal, Jr., Nicholasville, for movant.

William Miles Arvin, Nicholasville, for respondent.

VANCE, Justice.

The question is whether a party seeking to show misconduct of a spouse as a factor in the determination of child custody must first introduce evidence showing that the alleged misconduct has adversely affected the child before the proffered evidence may be admitted or considered by the trial court. This is an appeal from a judgment which awarded custody of two children to the father, relying to some extent on the misconduct of the mother. The Court of Appeals affirmed. We granted discretionary review in order to consider further the procedures required by K.R.S. 403.270(2) and by our decision in *Moore v. Moore,* Ky., 577 S.W.2d 613 (1979).

The movant mother and respondent father are the parents of two boys born during the first marriage of these parties to each other. They were divorced in September, 1978, custody of the children being

awarded to the father. Shortly after the divorce the mother married Mike Iverson. This marriage lasted about six months and the mother and Iverson were divorced in May, 1979. At the time of the divorce movant was pregnant with Iverson's child. She remarried respondent in August, 1979, six days after the birth of Iverson's child. This second marriage of movant and respondent lasted for one year, it being dissolved in August, 1980.

For a substantial time during the second marriage of these parties Iverson was confined in prison for forgery. During this confinement beginning no later than one month after the remarriage of movant and respondent and continuing until Iverson's release from prison, Iverson and movant engaged in a voluminous and lurid correspondence expressing the passionate love which existed between them and revealing their plans to get back together when Iverson got out of prison. Iverson, an admitted alcoholic who had once attempted suicide, alluded in his letters to their previous use of drugs and his expectation that such use would continue.

In one of her letters to Iverson, movant stated:

I've had three affairs since I left him last December, one is you. Maybe I'm a slut or a whore or whatever else he called me. I don't feel ashamed of it. I don't think I should.

In addition to her various affairs, movant admitted she had written a number of cold checks.

Iverson was released from prison in March, 1980, and either by plan or coincidence movant and respondent were separated about that time. They were divorced in August, 1980, and movant commenced living with Iverson again in November, 1980.

The movant objected to all of the above-mentioned testimony upon the ground that respondent had not first laid a foundation by showing that the things testified about affected her relationship with the children. K.R.S. 403.270(2) provides:

The court shall not consider conduct of a proposed custodian that does not affect his relationship to the child . . . .

In *Moore v. Moore, supra,* this court held that a trial court should not have admitted into evidence or considered a single episode of sexual misconduct on the part of the mother which occurred out of the presence of her five-year-old daughter when there was no evidence whatever that this episode adversely affected the child.

The only conclusion to be drawn from K.R.S. 403.270(2) when read with the note of the commissioners is that there must be proof that the sexual misconduct affects the relationship of the parent to the child; otherwise, the evidence of such misconduct is irrelevant and should not be admitted into evidence. Here there is no showing or even a suggestion that the child was aware of respondent's misconduct or that the relationship of the child and the respondent was in any way affected by this incident. *Moore, supra* at 614.

Movant, relying upon *Moore,* argues here that it was not shown that the children were aware of the mother's misconduct or that such conduct had adversely affected them. Movant contends that, absent testimony that alleged misconduct has adversely affected the children, the trial court cannot consider it in determining the placement of custody.

Movant's reliance upon *Moore* is misplaced. In the first place, this case is distinguishable from *Moore* on the facts. *Moore* dealt with admissibility of a single episode of sexual misconduct. This case presents a potential continued exposure of the children to an unwholesome environment.

■ In the second place, the movant errs in her view that there must be testimony or other evidence to establish that the misconduct has adversely affected the children before such conduct can be considered by the trial court. K.R.S. 403.270(2) does not prescribe the method by which a trial court shall determine whether misconduct affects the parent's relationship to the child. We do not think the statute intended to require

the testimony of a child psychologist or a social worker that certain conduct had affected, or would adversely affect, the child as an absolute prerequisite to the consideration of the conduct by the trial judge.

A trial judge has a broad discretion in determining what is in the best interests of children when he makes a determination as to custody. In many instances he will be able to draw upon his own common sense, his experience in life, and the common experience of mankind and be able to reach a reasoned judgment concerning the likelihood that certain conduct or environment will adversely affect children. It does not take a child psychologist or a social worker to recognize that exposure of children to neglect or abuse in many forms is likely to affect them adversely. Many kinds of neglect or abuse or exposure to unwholesome environment speak for themselves, and the proof of the neglect or abuse or exposure is in itself sufficient to permit a conclusion that its continuation would adversely affect children.

We also think the trial court is not precluded from consideration of circumstances where the neglect, abuse, or environment has not yet adversely affected the children but which, in his discretion, will adversely affect them if permitted to continue. In other words, a judge is not required to wait until the children have already been harmed before he can give consideration to the conduct causing the harm. *S. v. S.,* Ky.App., 608 S.W.2d 64 (1980); K.R.S. 403.340(1).

In summary, when the misconduct of a proposed custodian is advanced as a factor in the determination of custody, evidence of such misconduct may be heard and received, but before giving any consideration to such misconduct, the court must conclude, in his reasonable discretion, that such misconduct has affected, or is likely to affect, the child adversely. If such a determination is made, the trial court may then consider the potential adverse effect of such misconduct as it relates to the best interests of the child.

In this case the choice lay between placing custody with a father who had previously had custody of the children and who proposed to keep them, as he had before, in the home of the grandparents which the trial court concluded to be a wholesome environment and a desirable place for the children to be reared, or placing custody with the mother who saw nothing wrong in engaging in a number of extramarital affairs over a continuing period—who opined that she might be a whore or a slut, who carried on a lurid clandestine correspondence while married with an imprisoned felon, not her husband, and who commenced to cohabit with the prisoner in the home where the children resided after he was released from prison. Although movant testified at the custody hearing that she was not presently living with Iverson, that neither she nor Iverson presently used drugs and that Iverson had undergone treatment for alcoholism and no longer had a problem with alcohol—the fact remained that all those conditions had existed in the past and could recur.

On the basis of the facts presented the trial judge determined that the environment of the children around the mother was quite suspect and that the best interests of the children would be served by granting custody to the father. We cannot find any abuse of discretion by the trial court.

The decision of the Court of Appeals is affirmed.

All concur, except GANT, J., who did not sit.