RENDERED:  MARCH 12, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1866-MR

DANIEL TIMOTHY WILLIAMS                                    APPELLANT

                   APPEAL FROM MORGAN FAMILY COURT
v.                   HONORABLE DAVID D. FLATT, JUDGE
                   ACTION NO. 19-CI-00078

ALISHA DAWN WILLIAMS                                    APPELLEE

OPINION
AFFIRMING IN PART, VACATING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  LAMBERT, MAZE, AND L. THOMPSON, JUDGES.

LAMBERT, JUDGE:  In this dissolution action, Daniel Timothy Williams (the father) has appealed from the decisions of the Morgan Family Court related to custody, timesharing, and the allocation of two firearms.  We affirm in part, vacate in part, and remand for the entry of written findings of fact supporting the custody decision.

Alisha Dawn Williams (the mother) and the father were married on July 5, 2016. One child was born of the marriage in February 2017, and the mother had nine-year-old twins from a previous relationship. The parents separated on May 17, 2019, and the mother filed a petition to dissolve the marriage in the Morgan Family Court on June 4, 2019. In her petition, the mother alleged that the marriage was irretrievably broken and sought a restoration of nonmarital property and the division of the marital estate, custody of the child, child support, and attorney's fees and costs. By separate motion, the mother sought temporary custody of the child as well as child support from the father. The mother stated that one week after their separation, the father had obtained possession of and prevented her from seeing the child. On June 12, 2019, the father filed a motion for temporary sole custody with visitation for the mother. In an attached affidavit, the father claimed to have been the primary caretaker of the child. He alleged that the mother did not properly supervise the child. She would also allow her twin son and daughter to be in caretaking roles while she had the child. In addition, father alleged that the child had been injured while in the mother's care.

The parties appeared before the court on July 8, 2019, and informed they court they had reached a temporary agreement. The court entered an order memorializing the agreement on July 15, 2019. In the order, the court stated that the parents would have joint custody of the child, set up a timesharing schedule,

-2-

and set aside the existing domestic violence and emergency protective orders, noting that separate orders providing for protection would be entered. And the mother was not permitted to allow her nine-year-old twins to be the child's sole babysitters. A final hearing was scheduled for August 14, 2019.

Rather than holding a final hearing August 14, 2019, the court instead held a hearing on temporary custody. The mother testified about her work teaching English online and that she had nine-year-old twins from a previous relationship. The twins' father had visitation with them every other weekend. From the time the child was born, she had been his primary caretaker, both emotionally and physically. She took him to and picked him up from daycare, and she took him to doctor's visits. The mother admitted that the child had been injured when he fell from a stage during a birthday party when he was eight months old. However, the child had never been hospitalized. She testified that she had raised her twins on her own, and she had not had any problems with social workers or with the twins' father saying she was unfit. No complaints had been made against her regarding the care of her children. She reported that the father worked all of the time, even when he was not hauling a load of logs on his truck. When the father had the child, his mother would watch the child because the father worked so much. The mother believed it was in the child's best interest that he

remain primarily with her; he had been with her since birth, and she took primary care of him.

On cross-examination, the mother admitted she that she had left the child for extended periods of time with the father after the petition was filed and the July agreement had been entered into. She had not had any problems supervising the child since they had entered into the agreement, and she denied that she had left the child solely in the care of the twins. The mother admitted that the child had gotten sunburned and had become bruised and scratched while in her care. He had also gotten a splinter in his foot; she believed he probably got it on her porch. The mother addressed a Facebook post she made showing the child sitting on an open oven door while the oven was off. She said he liked to open the oven, and she bought a device to keep it closed that did not work. The child had also burned his fingers when he touched the metal piece in the back of the dryer while she was folding towels. He got blisters on his fingers as a result.

The mother called the father to testify as if on cross-examination. He stated that he was self-employed and ran a trucking business hauling logs. He worked nine hours a day, and he would get home about 5:00 or 6:00 in the evening. He would sometimes work in the garage after that. The father did not believe the child should be with the mother because she did not watch him. Since they entered into the July agreement, something had been wrong with the child

every week. He recounted sunburns, finger burns, and a splinter in his foot that the father removed. The father accused the mother of driving the child around without a car seat. He tried to call a social worker, but the social worker would not answer the phone or return his calls. He did not report any incidents to law enforcement. He believed that the twins supervised the child most of the time when the child was in the mother's care.

On direct examination, the father recounted additional deficiencies in the mother's supervision, including that the mother would be asleep when the father came to get the child and that the child would be starving. As to his role as a parent when they were still together, the father said he took care of the family financially. He also saw to the child's daily needs, including dressing and feeding him, and he took the child to the doctor for checkups. The father testified that the mother left the child in his care for extended periods after the separation. He believed his flexible work schedule would permit him to take care of the child when he needed to. He requested the court to find that he was more appropriate to be the primary caregiver.

At the conclusion of the testimony, the court orally ruled that it found no evidence to deviate from equal parenting time and opted to order joint custody and equal timesharing on a temporary basis. The court entered a written temporary order immediately following the hearing memorializing this ruling and ordering

the father to pay the mother $350.00 per month in child support. A final hearing was scheduled for October 31, 2019.

In his pre-trial memorandum, the father listed the marital and nonmarital property that should be assigned or awarded. He indicated that the Smith & Wesson 9mm pistol and the Savage .308 rifle were marital property. As to his ability to care for the child, the father stated that he was self-employed and had a flexible work schedule. He generally worked from 7:00 am to 4:00 pm or from 7:30 am to 4:30 pm. Based upon his allegation that the mother was not properly caring for the child while in her care, the father requested that the court permit him to take the child to and pick the child up from daycare every day, with the child remaining with him every evening during the week. The mother would be able to have visitation with the child every other weekend.

In her pre-trial memorandum, the mother claimed that the pistol and rifle were given to her as gifts and should be assigned to her. As to timesharing, she believed the court would continue with the 50/50 timesharing, but she wanted a different arrangement. She proposed a three-day/three-day split, with Sundays split between them. She also sought an award of child support based upon the amount of money the father grossed in his trucking business.

The court held the final hearing as scheduled on October 31, 2019. The mother testified first and provided the necessary statutory evidence to support

the dissolution. Counsel asked the court to take judicial notice of the prior hearing as to the child custody issue, which the court allowed. Since the last hearing, the mother had started a new job as a drug court collector supervisor for a contractor of the Administrative Office of the Courts. This position required her to travel throughout the eastern half of the Commonwealth. She would leave between 4:30 and 6:00 every morning, depending on where she needed to travel. Her father took the twins to school and the child to daycare. She would get home between 2:00 and 4:00 in the afternoon. Depending on her schedule, her father or the child's father would have to pick the child up from daycare. The father had also watched the child while she took out-of-town trips. The mother signed the child up for soccer, although she had not been able to attend all of his games, while the father had done so.

As far as the timesharing split with the father, the mother wanted one parent to have the child for three days, then the other parent to have the child for three days, and for each Sunday to be split between them. She did not like not being able to see the child for a whole week. The current schedule was hard on the child and confused him.

The mother believed she adequately supervised the child, but she admitted that he would sometimes get away from her because "he is a kid." The mother agreed that she had sent a text message to the father that read, "I want him

to get bruises and scrapes. That is how they learn." She explained that she did not want the child to get hurt, but said children have to learn, and will get scrapes and bruises because they are children. The mother testified about the father's shortcomings, including his emotional and verbal abuse, his need to control her, and his drinking issues.

Regarding the firearms, the mother testified that they were gifts, and she thought they should be awarded to her. The husband had other guns that were his; she only wanted the ones that were gifts to her.

The father testified next. He described his day-to-day care of the child and testified that the child was with him when he was not at work. He believed it was in the child's best interest for him to be designated as the primary custodian because the child got better care and supervision with him. The father went on to testify that timesharing had not gone pursuant to the court's order. The mother had given up many of her days with the child and left him with the father. The father expressed concern about the mother's job and travel schedule. He also expressed concern about her having guns. He said that she did not know how to handle them or keep them safe with children in the home. He did not think she would keep the firearms locked up.

The father called Pam Williams, his mother, next. She described the father in a caretaking role with the child. He was very loving and attentive,

interacted with the child on his level, and took care of him in all respects. She saw him feeding, dressing, and bathing the child many times. Ms. Williams also observed the mother in this role. She described the mother as preoccupied and inattentive while at Ms. Williams' residence. She expressed some concern that the mother had recently brought the child to her home only wearing summer shorts without a diaper or underwear on. She said the mother had also encouraged the child to fight with his half-brother.

At the conclusion of the testimony, the court entered oral rulings related to the contested issues. As to the issue of the pistol and rifle, the court awarded the firearms to the mother as her nonmarital property, observing that the father never claimed at the hearing that they were not her nonmarital property. The court cautioned the mother to keep them safely away from the children in a safe with gun locks. As to custody, the court ruled that the presumption of shared, equal custody set forth in Kentucky Revised Statutes (KRS) 403.270(2) had not been overcome and that it was in the best interests of the child that joint custody be awarded. The court considered the various factors and found that the parties had different wishes, there was no information on the child's wishes, the child appeared to get along well with both parents and extended family members, there was no motivation of either party in attempting to gain custody, the child appeared to be well-adjusted and healthy, and there was no testimony as to any physical

health problems of the parties. The court set up a timesharing schedule and did not award any child support as the parents' incomes were basically the same. The court entered a calendar order noting that it had made findings of fact on the record and that counsel for the mother was to prepare the decree.

The court entered its written findings of fact, conclusions of law, and decree of dissolution on November 12, 2019. The court noted that it had adopted the evidence introduced at the August 24, 2019, temporary custody hearing as evidence to be considered at the final hearing. The court made the necessary statutory findings to dissolve the marriage, and it considered the evidence introduced as to parties' respective income as well as the marital and nonmarital property. As to the issue of custody, the court concluded as follows:

> 3. The Court has considered for purposes of a custody determination all applicable law including, but not limited to, the provisions of KRS 403.270 and in particular subsection 2 thereof, and the rebuttable presumption set forth therein. The Court finds that there has been no evidence submitted sufficient to rebut the presumption provided for in KRS 403.270(2).

Therefore, the court awarded the parties joint custody of the child with a 50/50 timesharing arrangement as this would be in the child's best interests. The court set up a timesharing schedule and confirmed that no child support would be awarded. The court went on to address the marital and nonmarital property. It

deemed the two firearms as marital property and awarded them to the mother as part of its just distribution of marital property.

The father moved the court to alter, amend, or vacate its November 12, 2019, order, arguing that the order of equal timesharing under KRS 403.270 was erroneous and that he had rebutted the presumption with the evidence he submitted at the hearings. Equal timesharing, he argued, was not in the child's best interests and would not ensure his welfare. The father requested that he be designated as the child's primary custodian and that the child spend the majority of time with him. The father also sought review of the award of the marital firearms to the mother due to her lack of supervision of the child. This created a risk of harm to the child. In response, the mother argued that the proof introduced at the hearings was inadequate to overcome the presumption of 50/50 timesharing set forth in the statute. Because there was no showing of any substantial danger to the child, the father's motion had no merit. The court denied the father's motion in orders entered December 2 and December 9, 2019. This appeal by the father now follows.

On appeal, the father argues that the court erred in concluding that he had not rebutted the presumption in KRS 403.270(2), failed to make specific findings as to custody, and erred in awarding the firearms to the mother. The

mother disagrees with these arguments and urges this Court to affirm the family court's judgment.

Kentucky Rules of Civil Procedure (CR) 52.01 provides the general framework for the family court as well as review in the Court of Appeals:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment . . . . Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

*See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (footnote omitted) (An appellate court may set aside a lower court's findings made pursuant to CR 52.01 "only if those findings are clearly erroneous.").

CR 52.01 provides that a reviewing court must afford "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." And "when the testimony is conflicting we may not substitute our decision for the judgment of the trial court." *R.C.R. v. Com. Cabinet for Human Resources*, 988 S.W.2d 36, 39 (Ky. App. 1998) (citing *Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. 1967)). *See Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008) (citation omitted) ("When an appellate court reviews the decision in a child custody case, the test is whether the findings of the trial judge were clearly erroneous or that he abused his discretion.").

KRS 403.270(2) sets forth the factors a court must consider when

deciding the best interests of the child in custody matters:

The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any de facto custodian. Subject to KRS 403.315, there shall be a presumption, rebuttable by a preponderance of evidence, that joint custody and equally shared parenting time is in the best interest of the child. If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or de facto custodian has with the child and is consistent with ensuring the child's welfare. The court shall consider all relevant factors including:

(a) The wishes of the child's parent or parents, and any de facto custodian, as to his or her custody;

(b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or de facto custodian may have over the child's wishes;

(c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;

(d) The motivation of the adults participating in the custody proceeding;

(e) The child's adjustment and continuing proximity to his or her home, school, and community;

(f) The mental and physical health of all individuals involved;

(g) A finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed

-13-

by one (1) of the parties against a child of the parties or against another party. The court shall determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program;

(h) The extent to which the child has been cared for, nurtured, and supported by any de facto custodian;

(i) The intent of the parent or parents in placing the child with a de facto custodian;

(j) The circumstances under which the child was placed or allowed to remain in the custody of a de facto custodian, including whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence as defined in KRS 403.720 and whether the child was placed with a de facto custodian to allow the parent now seeking custody to seek employment, work, or attend school; and

(k) The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent or de facto custodian, except that the court shall not consider this likelihood if there is a finding that the other parent or de facto custodian engaged in domestic violence and abuse, as defined in KRS 403.720, against the party or a child and that a continuing relationship with the other parent will endanger the health or safety of either that party or the child.

"Generally speaking, a trial court has broad discretion in determining what is in the best interest of children when making determinations as to custody." *Keith v. Keith*, 556 S.W.3d 10, 15 (Ky. App. 2018) (citing *Krug v. Krug*, 647 S.W.2d 790, 793 (Ky. 1983)).

-14-

We shall first consider the father's second argument, which addresses whether the family court made the requisite written findings to support its decision on custody pursuant to CR 52.01. The father contends that the family court did not make sufficient written findings to support its decision that the father had not rebutted the presumption in KRS 403.270(2) in either its August 19, 2019, temporary custody order or in the November 12, 2019, final order. The mother, on the other hand, argues that the father failed to bring this deficiency to the family court's attention via CR 52.04 and is therefore barred from raising this on appeal. Our review of the October 31, 2019, hearing reflects that the family court made several oral findings related to the factors listed in KRS 403.270(2); however, these oral findings were not included in the written order. Rather, the court merely stated in the written order that it had considered both the factors in KRS 403.270(2) to determine that the presumption had not been rebutted and the remaining provisions of the statute to determine that joint custody with 50/50 timesharing was in the child's best interests.

The Supreme Court of Kentucky extensively addressed the issue of the need for written findings of fact in *Keifer v. Keifer*, 354 S.W.3d 123 (Ky. 2011), holding that oral findings are not enough to satisfy the statutory requirement of KRS Chapter 403 that findings be in writing:

> Cory [the appellant] . . . argues that even if written findings were necessary, Jaylynne [the appellee] failed to

preserve the issue for appellate review [by the Court of Appeals] because she did not follow the requirement of CR 52.04 that she request the trial court to make the specific findings.

We addressed these initial points in our recent decision in the case of *Anderson v. Johnson*, 350 S.W.3d [453, 454 (Ky. 2011)]. There we held that in domestic relations cases, post-decree motions concerning visitation and timesharing modifications are "actions tried upon the facts without a jury" under CR 52.01, and therefore "CR 52.01 requires that the judge engage in at least a good faith effort at fact-finding and that the found facts be included in a *written* order." *Id*. (emphasis added). We again state with emphasis that compliance with CR 52.01 and the applicable sections of KRS Chapter 403 requires written findings, and admonish trial courts that it is their duty to comply with the directive of this Court to include in all orders affecting child custody the requisite findings of fact and conclusions of law supporting its decisions. Consideration of matters affecting the welfare and future of children are among the most important duties undertaken by the courts of this Commonwealth. In compliance with these duties, it is imperative that the trial courts make the requisite findings of fact and conclusions of law to support their orders. Thus, we agree with the Court of Appeals that the order here was deficient and we reject Cory's argument that the trial court was not obligated to make written findings of fact when it ruled upon Jaylynne's motion.

Cory also argues that the Court of Appeals erred by reversing the trial court's order on account of its deficient fact findings because Jaylynne's failure to comply with CR 52.04 by requesting specific findings resulted in a waiver of that issue. We also addressed that question in *Anderson* and concluded that a trial court's "[f]ailure to [make any of the statutorily required findings of fact] allows an appellate court to remand the case for findings, even where the complaining party

-16-

failed to bring the lack of specific findings to the trial court's attention." *Id.* at 458. However in the instant case, while the written order entered by the trial court failed to reflect those findings of facts, and even failed to indicate compliance with the "best interest of the child" standard, the factual basis for the trial court's decision is not a mystery.

At the conclusion of the evidentiary hearing, the trial judge explicitly stated comprehensive findings, albeit orally instead of in writing, which indicated clearly that she was basing her decision on what she determined from the evidence to be in the children's best interest. She referenced facts pertinent to the applicable factors set forth in KRS 403.270(2). But for the use of a deficient and wholly inadequate written order, the judge complied with her duty to make findings of fact, at least in substance if not in form. As emphasized above, the trial judge's duty is not satisfied until the findings have been reduced to writing. Nevertheless, we need not ignore findings of fact and conclusions of law orally issued from the bench at the end of the hearing to inform us as to the trial court's *ratio decidendi*.

Notwithstanding our conclusion that the trial court's rationale is readily determinable from the record, we state again that compliance with CR 52.01 and the applicable sections of KRS Chapter 403 requires written findings. We do not expect the appellate courts of this state to search a video record or trial transcript to determine what findings the trial court might have made with respect to the essential facts. Moreover, the final order of the trial court, especially in family law cases, often serves as more than a vehicle for appellate review. It often becomes a necessary reference for the parents and third parties, such as school officials, medical providers, or other government agencies with responsibilities requiring knowledge of the facts determined by the trial court. The judges presiding over family law matters must be mindful of the ramifications

-17-

of their written orders. A bare-bone, conclusory order such as the one entered here, setting forth nothing but the final outcome, is inadequate and will enjoy no presumption of validity on appeal.[1]

In summary, we affirm the decision of the Court of Appeals with respect to the inadequacy of the order. However, we conclude upon review of the record that adequate findings were made from the bench at the conclusion of the hearing. Nevertheless, in order to comport with the mandatory requirements of *Anderson*, we are constrained to remand the cause to the Hardin Family Court for entry of a new order setting forth in writing the trial court's findings of fact and conclusions of law. In compliance with this mandate, the family court may substantially rely upon its discussion from the bench at the conclusion of the evidentiary hearing.

*Keifer*, 354 S.W.3d 123, 125-27 (footnote 2 omitted).

In the present case, as in *Keifer*, we believe that the family court's oral findings at the October 31, 2019, hearing and the testimony and evidence introduced at both hearings most likely supported its custody ruling. However, we are constrained to remand this matter to the family court for the entry of an order

---

[1] "It has been suggested that our decision in *Commonwealth v. Alleman*, 306 S.W.3d 484, 484-485 (Ky. 2010) is authority for the view that oral findings preserved on video record will serve as the equivalent of written findings. That view is a misreading of *Alleman*, which held only that such oral findings satisfied the probationer's federal due process right to know the basis upon which his probation was revoked and to enable him to argue the sufficiency of those facts on appeal. The issue here is not constitutional due process, but compliance with the requirements of KRS Chapter 403 and our Civil Rules for written findings of fact and conclusions of law. In *Alleman*, we discerned no error. Here, the failure to provide written finding[s] is error, which, as noted, may be cured upon remand." (Footnote 3 in original.)

containing written findings of fact and conclusions of law based on the evidence presented at the two hearings.

As to the family court's award of the firearms to the mother, we reject the father's argument that this was in error. KRS 403.190(1) addresses the disposition of property in a dissolution action and requires a court to "assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors[,]" including the contribution of the spouses to the acquisition of the marital property, the value of the property that the court had set apart for each spouse, the duration of the marriage, and the economic circumstances of each spouse. KRS 403.190(2) states that "[f]or the purpose of this chapter, 'marital property' means all property acquired by either spouse subsequent to the marriage except: (a) Property acquired by gift, bequest, devise, or descent during the marriage[.]" At the final hearing, the mother testified that these firearms were gifts to her, and the court, in its oral ruling, found that these items were nonmarital. However, in the written order, the court found that these firearms were marital property and concluded that it was just to award them to the mother. We note there was testimony that the father owned several other firearms.

The father asserts that it would not be in the child's best interest that the mother be awarded the firearms based upon his allegations that she did not

adequately supervise the child. However, as the mother points out, nothing in the statute requires the court to consider the best interests of the child when awarding property in a dissolution action. We find no abuse of discretion in the court's decision to award the mother the two firearms at issue and affirm on this issue.

For the foregoing reasons, we affirm in part and vacate in part, and we remand this matter to the Morgan Family Court "with specific directions to enter an order that properly reflects in writing that court's findings of fact and conclusions of law based upon the evidence that was presented at the hearing[s] previously held." *Keifer*, 354 S.W.3d at 127.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Robert G. Miller, Jr.
Paintsville, Kentucky

BRIEF FOR APPELLEE:

W. Jeffrey Scott
Brandon M. Music
Grayson, Kentucky