RENDERED: JANUARY 28, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1076-MR

RUSSELL ALAN JOHNSON                                               APPELLANT

v.
APPEAL FROM WARREN CIRCUIT COURT
HONORABLE DAVID A. LANPHEAR, JUDGE
ACTION NO. 18-CI-01108

MONICA ANN JOHNSON                                                 APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND JONES, JUDGES.

ACREE, JUDGE: Russell Johnson (Father) appeals the parental timesharing and

spousal maintenance portions of the Warren Family Court's April 13, 2020

findings of fact, conclusions of law, and decree, as amended August 7, 2020,

dissolving his marriage to Monica Johnson (Mother). We address each argument,

in turn, and affirm.

Father and Mother separated after nearly twenty years of marriage. They had two children, GAJ (age 14) and GFJ (age 4). The decree awards the parties joint custody with Mother assigned as the primary residential parent. Father was awarded parenting time that followed the Warren County Standard Timesharing Guidelines. Father seeks equal timesharing.

Father first argues the family court erred when it considered evidence of his third-party online relationship claiming the evidence was not relevant. He says the evidence:

> was that [Father] had a four (4) month relationship with a woman, Kasey, who he never met, that he occasionally sent pictures of his family to Kasey, and that he had a sexting relationship with Kasey, and that when he broke off the relationship Kasey sent numerous pictures to [Mother][.]

(Appellant's brief, p. 16.) Mother characterizes Father's behavior more graphically. The family court called this "risky internet behavior" and noted that "[t]he parties' oldest child has had some behavioral issues as it relates to appropriate internet use." Specifically, "[m]other found pornography and girls' sexting messages in the deleted photos file on GAJ's cell phone." When Mother informed Father, his response was "[h]e's a 13-year-old boy!"

On this point, Father moved the family court pursuant to Kentucky Rules of Civil Procedure (CR) 59 and, citing *Moore v. Moore*, 577 S.W.2d 613 (Ky. 1979), challenged "the Court's findings regarding his risky internet behavior

-2-

and extramarital conduct" as irrelevant.  The family court's order granting in part

and denying in part directly addressed Father's argument.  Citing *Krug v. Krug*,

647 S.W.2d 790 (Ky. 1983), the family court used two-and-one-half pages of the

order to explain the relevance of Father's conduct.  We agree with that analysis.

The family court noted that Father's behavior, although

distinguishable, was not so unlike that of the parent accused of misconduct in *Krug*

as to be irrelevant.  "In *Krug*," said the family court, "the wife exchanged lurid and

explicit letters with her paramour, and although the form of correspondence has

changed in the last 40 years, the principle of law has not."

This Court also finds *Krug*'s principle of law determinative.  Like

*Krug*, "[t]his case presents a potential continued exposure of the children to an

unwholesome environment."  *Id.* at 792.  Relevant here are the following excerpts

from *Krug*, quoted more fully by the family court in its order:

> A trial judge has a broad discretion in determining
> what is in the best interests of children when he makes a
> determination as to custody.  In many instances he will
> be able to draw upon his own common sense, his
> experience in life, and the common experience of
> mankind and be able to reach a reasoned judgment
> concerning the likelihood that certain conduct or
> environment will adversely affect children. . . .  Many
> kinds of . . . exposure to unwholesome environment
> speak for themselves, and the proof of the . . . exposure is
> in itself sufficient to permit a conclusion that its
> continuation would adversely affect children.

We also think the trial court is not precluded from consideration of circumstances where the . . . environment has not yet adversely affected the children but which, in his discretion, will adversely affect them if permitted to continue. In other words, a judge is not required to wait until the children have already been harmed before he can give consideration to the conduct causing the harm.

In summary, when the misconduct of a proposed custodian is advanced as a factor in the determination of custody, evidence of such misconduct may be heard and received, but before giving any consideration to such misconduct, the court must conclude, in his reasonable discretion, that such misconduct has affected, or is likely to affect, the child adversely. If such a determination is made, the trial court may then consider the potential adverse effect of such misconduct as it relates to the best interests of the child.

*Id.* at 793 (citations omitted).

The family court applied *Krug* to the evidence and concluded Father's "consumption and participation in such sexually explicit communication and behavior . . . has affected or is likely to adversely affect the children." We cannot say that the family court abused its discretion in so finding because it was supported by substantial evidence.

Father also challenges the weight the family court gave other evidence that led to the decision Father should have only the standard visitation. More weight, says Father, should have been given to Mother's "refusal/delay to have co-parenting therapy[.]" We reject this argument because "judging the credibility of

-4-

witnesses and *weighing evidence* are tasks within the *exclusive province* of the trial court." *Jones v. Livesay*, 551 S.W.3d 47, 51 (Ky. App. 2018) (emphasis added). However, we do note that the family court found as fact, based on the testimony of Mother's therapist, that Mother is "willing to have co-parenting counseling with Father."

More generally, Father argues the family court did not adequately explain why it was deviating from the "presumption, rebuttable by a preponderance of evidence, that . . . equally shared parenting time is in the best interest of the child." KRS 403.270(2). We disagree with Father.

In addition to the parties' testimony, the family court heard comprehensive testimony from the children's therapist and two other mental health professionals. In the context of that evidence, the family court methodically worked through each factor listed in KRS 403.270(2), making factual findings as to each, before concluding as follows:

> [T]he [c]ourt is convinced by a preponderance of the evidence that an equally shared parenting schedule does not serve the children's best interests. The parties do not communicate with each other except by text message, let alone sufficiently enough to co-parent the children to the extent an equal parenting schedule would require. The parents' parenting styles are world's apart, and frankly, the [c]ourt is concerned that Father either takes oversight and supervision of the children far too lightly, or he simply cannot tell his son, "No." . . .

The [c]ourt is concerned that equally shared parenting in this case would effectively leave the children unsupervised half the time.

The family court went on to express its concern that "Father wants to be a 'friend' to his sons" and "does not properly discipline the children when necessary."

The family court's decision to deviate from the rebuttable presumption of equal timesharing is supported by a preponderance of substantial evidence of record. Furthermore, the family court's award of timesharing based on the standard visitation schedule satisfies the court's statutory obligation to "construct a parenting time schedule which maximizes the time each parent . . . has with the child[ren] . . . ." KRS 403.270(2).

Finally, regarding the award of spousal maintenance, Father argues the family court "greatly underestimated [Mother's] earning ability . . . ." Again, this Court disagrees. The family court found Mother was making a little more than $35,000 per year based on actual income records. This substantial evidence suffices to support the finding.

We also reject Father's claim that the family court failed to "make findings as to [Mother's] ability to increase her earnings over time." (Appellant's brief, p. 23.) Father never says where in the record the family court failed, upon his request, to make such a finding. We examined the record, including Father's

motion pursuant to CR 52 for additional findings, and conclude he never asked the family court to make such a finding. As the Supreme Court recently said:

> We have long endorsed a rule that "specific grounds not raised before the trial court, but raised for the first time on appeal will not support a favorable ruling on appeal." When a trial court never has the opportunity to rule on a legal question presented to an appellate court, an appellant presents a different case to the appellate court than the one decided by the trial court. Indeed, an appellate court is "without authority to review issues not raised in or decided by the trial court." The proper role for an appellate court is to review for error–and there can be no error when the issue has not been presented to the trial court for decision.

*Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846, 852 (Ky. 2016) (footnotes omitted). In summary, the award of maintenance is supported by the evidence and in accordance with Kentucky law.

## CONCLUSION

For the foregoing reasons, the Warren Family Court's April 13, 2020 findings of fact, conclusions of law, and decree of dissolution, and the August 7, 2020 order amending the decree are affirmed.


ALL CONCUR.

BRIEF FOR APPELLANT:

Pamela C. Bratcher
Bowling Green, Kentucky

BRIEF FOR APPELLEE:

David F. Broderick
R. Taylor Broderick
Bowling Green, Kentucky